IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

LYDIA LINTON                                                                                       PLAINTIFF

V.                                                                             CASE NO 1:05CV156

MAGNOLIA REGIONAL HEALTH
SERVICES, INC., a/k/a MAGNOLIA
REGIONAL HEALTH CENTER and
RICK NAPPER                                                                  DEFENDANT

**MEMORANDUM OPINION**

This cause comes before the court on the defendants' motion [32-1] to dismiss, or in the alternative, for summary judgment. The court has reviewed the briefs and submissions and is prepared to rule.

Plaintiff Lydia Linton began her employment as an at-will employee with Magnolia Regional Health Services, a community hospital, in November 1989. Ms. Linton's original job title was Director of Utilization Review and Quality Assurance. She received additional responsibilities in 1995, which included risk management and legal compliance. At the time of her termination in 2005, Ms. Linton's job title was Director of Case Management, Risk Management and Performance Improvement.

The defendants contend that Ms. Linton was terminated because of her documented performance problems, complaints from three physicians, and her unwillingness to accept a non-administrative position. Rick Napper, the CEO and Administrator of Magnolia, and Administrative Assistant Renee Bullard held a counseling session with Ms. Linton to discuss her

1

performance and develop a plan for improvement on January 18, 2005. Roughly one month after the counseling session, the defendants contend that Ms. Linton demonstrated no improvement in her performance. As a result, Mr. Napper decided to consolidate Ms. Linton's position with another position and transfer her from administration to a position as a registered nurse. This change was suggested by consultants with Quorum Health Resources.

The defendants contend that on February 25, 2005, the plaintiff approached Mr. Napper in the hallway and went into his office to have a conversation. Mr. Napper then requested that the Human Resources Director, Don Long, join the meeting. Mr. Napper claims that Ms. Linton refused to discuss reassignment to another position or otherwise participate in the meeting, and that during that meeting Ms. Linton's employment with Magnolia ended. After the meeting, Ms. Linton was evaluated as eligible for rehire.

The plaintiff's version of events varies greatly from the defendants' version of events. Plaintiff alleges that in early 2005 she had been approached with a job offer by another employer and that she sought advice from her friend, physician and Magnolia board member Tommy Alexander. During that discussion, the plaintiff claims to have spoken about wanting to remain employed with Magnolia and also about her desire for an increase in salary.

On January 18, 2005, the plaintiff maintains that Rick Napper berated her, advising that it was inappropriate to discuss her salary with a board member and further indicating that he believed Ms. Linton and hospital attorney Vicky Mitchell were isolating themselves from the staff and plotting against him. She claims that he also told her that there were performance issues with her work.

On January 23, 2005, Ms. Linton's mother was admitted to Magnolia. Ms. Linton's

mother had been scheduled for a PET scan, but on February 3, 2005, Ms. Linton learned that the PET scan had been canceled. She contacted the charge nurse and was advised that the radiologist had canceled the scan because Medicare would not pay for it and that Mr. Napper would be upset if the scan was performed. Ms. Linton claims that the radiologist would only perform the scan if Mr. Napper ordered it. When Ms. Linton confronted Mr. Napper about the PET scan, he denied requiring the scan to be canceled due to cost and told her that he would have the charge nurse and the hospital attorney look into the matter. She also advised Mr. Napper that she intended to perform an investigation to determine how many patients were having diagnostic tests canceled because of an inability to pay. Later that night Mr. Napper called to inform Ms. Linton that her mother's test had been rescheduled, and she again reiterated her concern about how many patients had been denied diagnostic tests and her inclination to investigate the frequency of cancelled diagnostic tests.

Ms. Linton alleges that she began hearing a rumor that Mr. Napper was going to terminate her, and on February 25, 2005, Ms. Linton approached Mr. Napper to ask if there was any truth to the rumor. Mr. Napper purportedly told Ms. Linton that he did intend to fire her. He also asked her if she recalled their January 18 meeting, to which she responded that she did remember but she wanted to know the real reason for her termination. Mr. Napper told her that a consultant had reviewed her work and had concerns regarding her performance. Ms. Linton asserts that this reason is false because the consultant Mr. Napper referred to actually reviewed nurse and patient care, not administration.

In her complaint, Ms. Linton alleges that she was terminated for her exercise of her First Amendment free speech rights because Mr. Napper knew of her intentions to launch an

3

investigation into the denial of medical procedures. She also claims malicious interference with employment, wrongful termination, and vicarious liability. As both parties have submitted evidence beyond the pleadings, the court will treat this motion as a motion for summary judgment.

ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S.Ct. at 2110.

42 U.S.C. § 1983 provides a private right of action against persons acting under color of any statute, ordinance, regulation, custom, or usage of any State to redress the deprivation of rights secured by the United States Constitution or federal law. The defendants assert that Magnolia is not a "person" for purposes of §1983 and that allowing a suit to proceed against Magnolia would constitute a violation the Eleventh Amendment. In determining whether an entity is entitled to Eleventh Amendment immunity, we must examine the particular entity in

question and its powers and characteristics as created by state law. *Clark v. Tarrant County, TX*, 798 F.2d 736, 744 (5th Cir. 1986). A proper inquiry into whether the state is a real party in interest considers:

> 1. whether the state statutes and case law characterize the agency as an arm of the state;
> 2. the source of funds for the entity;
> 3. the degree of local autonomy the entity enjoys;
> 4. whether the entity is concerned primarily with local, as opposed to statewide problems;
> 5. whether the entity has the authority to sue and be sued in its own name; and
> 6. whether the entity has the right to hold and use property.

*Clark*, 798 F.2d at 736-48.

Magnolia is a community hospital as defined by Miss. Code Ann. § 41-13-10. The statute delegates governance, operation, and maintenance of a community hospital to a board of trustees. In this case, Magnolia's board is appointed jointly by the aldermen and mayor of the City of Corinth and the Alcorn County Board of Supervisors.

The source of an entity's funding is considered because an important goal of the Eleventh Amendment is to protect the state treasury. *Id*. at 744. According to the plaintiff, Magnolia receives funds from Medicaid and Medicare. The defendants did not address Magnolia's source of funding in its brief. However, Miss. Code Ann. §41-13-47 and a June 27, 1991 Attorney General opinion states that the legislature intended that budgets proposed by county hospitals be approved or disapproved by the owners of the hospital and that any amendments or changes should be initiated by the board of trustees then presented to the owners. Op. Atty. Gen. *Ross*, 1991 WL 577648 (June 27, 1991). Owners of community hospitals tend to be city or county governments, not the state.

Miss. Code Ann. § 41-13-35 vests authority in the board of directors to carry out

5

activities necessary to operate a hospital, and the aforementioned Attorney General opinion also recognized the large range of discretion the legislature granted to the board of trustees. Examples of some of the actions the statute enables the board to engage in include the establishment of committees, enacting and enforcing bylaws, investing the hospital's funds, and entering into contracts.

Magnolia is a community hospital, and its purpose is to render services to citizens in the surrounding community. The board is also statutorily entitled to sue and be sued in its own name as well hold and use property. See Miss. Code Ann. §41-13-35.

Examination of the *Clark* factors as a whole indicates that this community hospital is much more closely tied to the municipality and county rather than the State of Mississippi, even though community hospitals are statutorily created. As the state is not a real party in interest, Magnolia constitutes a "person" for purposes of §1983.

The defendants also contend that Rick Napper is entitled to qualified immunity for purposes of the plaintiff's §1983 claims. Qualified immunity was established to reconcile two competing interests: the compensation of persons whose federally protected rights have been violated against the public interest that civil lawsuits against public officials will hinder their ability to perform their duties. *Harris v. Mississippi Valley State University*, 873 So.2d 970, 979 (Miss. 2004). Qualified immunity has therefore been recognized to protect "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d. 271 (1986)). The test for qualified immunity is two-fold, with the threshold question being whether the plaintiff has suffered a violation of a clearly established constitutional right. *Id.* First, the court must determine whether the plaintiff has

6

alleged a violation of a clearly established constitutional right. *Id*. If the plaintiff fails this step, the defendant is entitled to qualified immunity. *Id*. If she is successful, the issue becomes the objective legal reasonableness of the defendant's conduct under the circumstances. *Id*. Whether an official is entitled to qualified immunity depends on the "objective reasonableness of the action" assessed in light of the legal rules that were "clearly established" at the time it was taken. *Id*. "Clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have known that their conduct violated the United States Constitution or the federal statute as alleged by the plaintiff. *Id.* The "defendant's circumstances" include facts known to the defendant. A defendant's subjective state of mind is irrelevant as to whether that defendant is entitled to qualified immunity because qualified immunity hinges upon the objective reasonableness of the defendant's acts. *Id*. If the defendant pleads qualified immunity and shows that he is a government official whose position involves discretionary duties, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id*.

First, this court must determine whether the facts alleged by the plaintiff establish a violation of a clearly established right. Ms. Linton has alleged that she was terminated in violation of her First Amendment rights for attempting to launch an investigation into the cancellation of tests due to fear that payment would not be rendered. She alleges that he purposely terminated her before she had an opportunity conduct the investigation.

To prevail on a First Amendment employment retaliation claim, an employee must

7

establish four elements: (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) her speech motivated the employer's adverse employment action. *Salge v. Edna Indep. School Dist.*, 411 F.3d 178, 184 (5th Cir. 2005).

The defendants acknowledge that Ms. Linton's termination constitutes an adverse employment action, satisfying the first element of her claim; therefore, we now determine whether her speech was on a matter of public concern. In *Garcetti v. Ceballos*, the Supreme Court stated:

> "Employees in some cases may receive First Amendment protection for expressions made at work. Many citizens do much of their talking inside of their respective workplaces, and it would not serve the goal of treating public employees like "any member of the general public," to hold that all speech within the office is automatically exposed to restriction."

---U.S.---, 126 S.Ct. 1951, 1959, 164 L.Ed. 2d 689 (2006).

Nonetheless, the Supreme Court held that Ceballos, a deputy district attorney, was not entitled to First Amendment protection because his expressions were made pursuant to his duties as calendar deputy. *Id*. at 1959-60. Part of his job requirement was to write memos advising his superior about how to proceed with pending cases, and Ceballos did not dispute that he wrote the memorandum at issue pursuant to his job duties. *Id*. Ms. Linton expressed her desire to investigate cancellations of PET scans and other diagnostic tests after discovering that her mother's PET scan had been cancelled. While a personal situation brought these activities to her attention, Ms. Linton's deposition testimony acknowledged that she intended to launch the investigation pursuant to her official capacity as Director for Performance Improvement. As the

8

investigation was to be in her official capacity pursuant to her job duties, this court is forced to find that her speech was not on a matter of public concern. As the plaintiff fails to establish the second element of her First Amendment claim, there is no need for further inquiry into whether Mr. Napper is entitled to qualified immunity, since the facts as the plaintiff alleges them do not support a finding of a violation of a right.

State Law Claims

The plaintiff also asserts claims for termination in violation of public policy and for malicious interference with employment. The defendants assert that the plaintiff's claims are subject to the provisions of the Mississippi Tort Claims Act. In particular, they contend that Miss. Code Ann. § 11-46-9(1)(d) and (g) prohibit Magnolia and its employees from being found liable for discretionary duties of a government entity or employee, whether or not the discretion is abused and the exercise of discretion regarding the hiring of personnel and the provision of adequate government services. Alternatively they assert that the plaintiff has failed to comply with the notice provisions of the Mississippi Tort Claims Act, and that failure to exhaust these administrative remedies should result in dismissal of her claims.

The Mississippi Tort Claims Act requires that a person file a written notice of a claim in person or by registered or certified mail with the chief executive officer of a government entity before proceeding with a civil action. *See* Miss. Code Ann. 11-46-11(1). The notice must be given at least ninety days prior to commencing action. The plaintiff has failed to provide any notice at all. Her failure to comply with the notice provision is particularly regretful because this suit was filed well within the statute of limitations, and the plaintiff could have easily rectified her failure to comply with the statutory provisions. At this juncture however, the statute of

9

limitations has run, and the failure to provide notice requires that this court dismiss her state law claims. Accordingly, the defendant's motion [32-1] for summary judgment is GRANTED. This case is now closed.

This the 5th day of March, 2007.

                                                  **/s/ Michael P. Mills**
                                                  **UNITED STATES DISTRICT JUDGE**